1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

CECILIA WILSON, as guardian for R.W., a
minor; KEVIN and CECILIA WILSON,
individually and as husband and wife;
CANDACE DAWSON, as guardian for J.D.,
a minor;  and CANDACE DAWSON,
individually; JANE DOES 1-10; and JOHN
DOES 1-10,

NO.

COMPLAINT FOR DAMAGES

DEMAND FOR JURY

11
12
13
14
15

Plaintiffs,

16

vs.

17
18
19
20
21

LONGVIEW SCHOOL DISTRICT, a
municipal corporation; MINT VALLEY
ELEMENTARY SCHOOL, a municipal
corporation; JERRY STEIN, in his individual
and official capacity; PATRICK KELLEY, in
his individual and official capacity;
SUZANNE CUSICK, in her individual and
official capacity; NANCY BEAN, in her
individual and official capacity; JANE DOES
1-10; and JOHN DOES 1-10,

22

Defendants.

23
24

COME NOW Plaintiffs, by and through their undersigned attorneys for cause of action

25

against Defendants and allege as follows.

26

COMPLAINT FOR DAMAGES - Page 1
No.

## I.       INTRODUCTION

1.1      This lawsuit arises out of Defendants' unlawful use of an isolation room to discipline elementary school children attending the Mint Valley Elementary School located in Long View, Washington.   Upon information and belief, during a period of time between August 2008 and November 27, 2012, certain teachers and administrators at the Mint Valley Elementary School placed R.W. and J.D., two elementary school children, in an isolation room without parental permission or notification and in violation of R.W.'s and J.D.'s constitutional, common law, and statutory rights.   Defendants engaged in an ongoing practice of locking these two children in an isolation room, a windowless chamber smaller than a closet, unsupervised, for extended periods of time while they were students at Longview School District's Mint Valley Elementary School.   This harmful and unconscionable practice that was tantamount to placing elementary school age children into solitary confinement caused Plaintiffs to suffer significant damages.

1.2      Based upon information and belief, this illegal use of the isolation room was an ongoing and widespread, and involved more than just R.W. and J.D.

## II.       PARTIES

2.1      Kevin and Cecilia Wilson are R.W.'s parents.   R.W. is a minor child, who was placed at Mint Valley Elementary School when he was five (5) years old.   The Wilsons' have resided at all relevant times at 128 Julie Place, Longview, Washington 98632, an address located within the Longview School District.

2.2      Candace Dawson is J.D.'s parent.   J.D. is a minor child, who was placed at Mint Valley Elementary School when he was six (6) years old.   J.D. currently resides with his

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

mother at 533 2nd Avenue N.E., Marysville, Washington 98270. Candace Dawson and J.D. were residents of the State of Washington at all relevant times.

2.3     The Longview School District is a municipal corporation organized under the laws of the State of Washington and is authorized to be sued in such corporate capacity for its acts and those of its agents and employees.

2.4     The Longview School District has its primary place of business in Cowlitz County, Washington.

2.5     Plaintiffs Jane and John Does 1-10 are parents and their children who were subjected to the isolation room but who have yet to be discovered.

2.6     At all relevant times, the Longview School District had authority over and was responsible for the placement, curriculum, and disciplinary measures taken with students at the Mint Valley Elementary School, including R.W. and J.D.

2.7     The Longview School District also had, at all relevant times, supervisory authority over Mint Valley Elementary School, its administration, faculty and staff.

2.8     The Mint Valley Elementary School is a municipal corporation organized under the laws of the State of Washington and is authorized to be sued in such corporate capacity for its acts and those of its agents and employees.

2.9     At all relevant times, the Mint Valley Elementary School was responsible for the care and education of R.W. and J.D., and it was responsible for enacting, maintaining, and improving the policies, procedures, and practices with regard to the education and discipline of students enrolled at Mint Valley Elementary School, including R.W. and J.D.

2.10    Mint Valley Elementary School also had supervisory authority over its administration, faculty, and staff.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

2.11    Suzanne Cusick was, at all relevant times, the superintendent of the Longview School District.  Defendant Cusick had, at all relevant times, supervisory authority over Patrick Kelley, Jerry Stein, and all other members of the administration, faculty and staff at Mint Valley Elementary School, including Jane and John Does 1-10, and was responsible for enacting, maintaining, and improving the policies, procedures, and practices with regard to student discipline and education at the Mint Valley Elementary School.

2.12    Patrick Kelley was, at all relevant times, the principal of the Mint Valley Elementary School.  Defendant Kelley had, at all relevant times, supervisory authority over Jerry Stein, and all other members of the administration, faculty and staff at Mint Valley Elementary School, including Jane and John Does 1-10, and was responsible for enacting, maintaining, and improving the policies, procedures, and practices with regard to student discipline and education at the Mint Valley Elementary School.

2.13    Upon information and belief, Jerry Stein was, at all relevant times, a Contained Learning Center (CLC) Specialist at Mint Valley Elementary School.  Defendant Stein had, at all relevant times, authority under the Longview School District and the Mint Valley Elementary School for enacting, maintaining, and improving classroom policies, procedures, and practices relating to the education and discipline of students at Mint Valley Elementary School including R.W. and J.D.

2.14    Ms. Nancy Bean was, at all relevant times, a 4th grade teacher at Mint Valley Elementary School.  Defendant Bean had, at all relevant times, authority under the Longview School District and the Mint Valley Elementary School for enacting, maintaining, and improving classroom policies, procedures, and practices relating to the education and discipline of students in her classroom at Mint Valley Elementary School including R.W.

COMPLAINT FOR DAMAGES - Page 4
No.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

2.15    Jane and John Does 1-10 are various individuals who will be identified through discovery and were at all relevant times teachers, officials, and other agents of the Longview School District and its related entities and agents who had responsibility for implementation classroom policies, procedures, and practices relating to the education and discipline of students at Mint Valley Elementary School including R.W. and J.D.

### III.    JURISDICTION

3.1    Plaintiffs bring this action against the Longview School District, the Mint Valley Elementary School, Suzanne Cusick, Patrick Kelley, Jerry Stein, Nancy Bean, and Jane and John Does 1-10 in accordance with federal and state law.  Plaintiffs have served a tort claim form, by written letter, in accordance with RCW 4.96.020.  Sixty days have elapsed before commencing this action.

3.2    This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because of the federal claims involved, among others, 42 U.S.C. § 1983.

### IV.    VENUE

4.1    The events giving rise to this lawsuit occurred in Cowlitz County, Washington. Venue is proper in this district under 28 U.S.C. § 1391(b).

### V.    FACTS

**A.  Seclusion of School Aged Children by Placement in Isolation Rooms**

5.2    Seclusion is considered one of the most restrictive forms of timeout because it completely removes the student from access to the educational environment and usually entails isolation of the student from other students and staff.

5.3    Seclusion is warranted only when a student's behavior is so out of control or dangerous that the student's behavior in the current environment poses a risk of injury to the student or others.

COMPLAINT FOR DAMAGES - Page 5
No.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

5.4     Seclusion through the use of an isolation room implicates the basic constitutional rights of students such as freedom from incarceration, cruel and unusual punishment, and loss of personal liberty.

5.5     The Washington State legislature has found that there is no educational or therapeutic benefit to children from isolating them as part of their public school programs when not necessary for immediate safety. The use of seclusion in nonemergency situations poses significant physical and psychological danger to students.

**B.  R.W. is restrained and forcibly placed inside the isolation room.**

5.6     On November 27, 2012, Patrick Kelley, the principal of Mint Valley Elementary School, sent a letter to the parents of current students.  The letter advised parents of a purported policy and practice regarding the use of an "isolation booth" on children who have Individualized Education Plan ("IEP") and whose parents provided parental consent. The letter also discussed how the booth was made the subject of Facebook posts and media inquiries following a general education student's observation of the use of the booth on Monday, November 26, 2012.

5.7     Upon receiving this letter, Plaintiffs Cecilia Wilson and/or Kevin Wilson read it aloud to a relative. The Wilson's first-grade son, R.W., overheard the reading of the letter and said: "It isn't called the 'box,' Mom, it's called the 'booth.'"  R.W. then explained that he had been placed in the isolation room on Halloween: October 31, 2012.

5.8     R.W.'s reported that his teacher, Mrs. Barbara Sudar called Mr. Stein and asked him to come and remove R.W. from the classroom because he was falling asleep on his desk. Mr. Stein escorted R.W. to his special education room and had him placed at a desk. Mr.

COMPLAINT FOR DAMAGES - Page 6
No.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

Stein told R.W. to be quiet in the room, but got into trouble when he got up from his seat to show another male student a picture of a monster that he had drawn.

5.9     After R.W. showed the picture to the male student, Mr. Stein grabbed R.W. and forced him into the isolation room.

5.10    Prior to being placed into the chamber, Mr. Stein removed R.W.'s shoes.

5.11    Mr. Stein placed R.W. in the isolation chamber on his stomach and held him down by pressing with his hands on the small of his back until he agreed to stand-up.  Once he stood up, he was told to stand with his back against the wall.  Once he did this, the door was closed and locked.

5.12    R.W. reported to his parents that he was terrified at being locked in the dark room.  He began screaming because he was scared and wanted his mom.

5.13    The Wilsons vividly remember Halloween 2012 because the school had called them asking that they come pick up R.W.  They went into the office, as they had done on prior occasions for similar calls; however, this time was entirely different than any other time. R.W. was not in the office.  Once in the office, one of the staff members made a phone call asking if it was alright to send the Wilson's down to retrieve their son.  After the phone call, the Wilsons were told where to go with the location being described to them.  They walked to Mr. Stein's room. Mr. Kelly was sitting in a chair holding R.W, restraining him while sitting on his lap. R.W. was screaming and crying begging to be released. R.W. was hyperventilating.  His parents were overwhelmed.

5.14    A female teacher's assistant (identity is not known) was standing at the door and greeted the Wilsons. The teacher's aid/ assistant handed Cecelia Wilson R.W's shoes. Ms. Wilson asked why his socks were wet. The teacher's assistant jokingly asked R.W. if he was

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

"jumping in puddles?" R.W. did not answer the question, he continued crying, screaming, in a state of hyperventilation.

5.15    Mr. Kelly released R.W. to Mr. Kevin Wilson. Mr. Wilson picked him up to take him home.

5.16    R.W. and his parents went immediately home. His breathing eventually returned to normal once he was safely home.

5.17    The Wilsons were never told that their son had been placed in an isolation room.

5.18    Following October 31, 2012, R.W. no longer wanted to go to school. He claimed that he was sick to his parents. The school officials called the Wilsons on a number of occasions after October 31st advising them that they needed to come and pick R.W. up from school.

5.19    Approximately, a week later, the Wilsons were called to come and pick-up R.W.  When they arrived at the school, they were taken into Mr. Kelly's office. Upon entering his office, the Wilson's witnessed Mr. Kelly restraining R.W.. Mr. Kelly advised the Wilsons that he was licensed to restrain children and "knew what he was doing." Once they walked into the room, Mr. Kelly released R.W. R.W. then hid under the table.

5.20    The Wilsons were traumatized by watching their son restrained against his will. The Wilsons only recall seeing R.W. restrained by Mr. Kelly on the two occasions. They had never given the school permission to restrain their son or put him in an isolation room.

5.21    Immediately following R.W.'s disclosure that he had been placed in the isolation room as discussed above, the Wilsons called the school.  Mr. Kelly called back immediately.  While on the phone, Mr. Kelly stated that he "had no knowledge" of the

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

isolation room being used on R.W., but that he would check into the matter and call them back.

5.22    During a meeting on November 28, 2012, Mr. Kelly stated: "I just want to let you know they asked me if they could put him in the box, and I told them absolutely not.  It was not right for him.  I told them no, but they did it anyway."  He further stated: "They should not have done it."

5.23    During this meeting, the Wilsons requested an opportunity to view the isolation room.  Mr. Kelly agreed but then proceeded to merely draw a picture of the isolation room, going on to say that he was late for a meeting.  He quickly shook their hands and left. The Wilsons did not get to see the isolation room that day.

5.24    R.W. reports that he was placed in the "isolation booth" on multiple occasions beginning sometime in September 2012 and up until his parents received Mr. Kelly's November 27, 2012 letter.

5.25    In addition to occasions involving the isolation room, R.W. was restrained in the presence and out of the presence of his parents on multiple occasions by school personnel.

5.26    Following the illegal use of the isolation room on R.W., R.W. experienced an aggravation of his undiagnosed disabilities, an increase in his disability-related behaviors and symptoms, and significantly increased emotional distress.  The Wilsons noticed the changes in their son's behavior sometime during October 2012. They are unaware of how many times R.W. was forcibly restrained without their knowledge or consent.  They began receiving frequent calls requesting that he be picked up as he was "sick," and on occasion "out of control."  At home, R.W. exhibited extreme anxiety over the mention of school.  He became fearful of being left alone, to the point that he would follow his mom into the bathroom.  He

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

began having trouble going to sleep and reported nightmares.  He would tell his parents and his teachers that he was too sick to go to school. Although the Wilsons did not know about the use of the isolation room at the time, in retrospect, these crises occurred after R.W. was forced into the isolation room.

5.27    On December 19, 2012, Mr. Kelley had "Laura" call and leave the following message: "Hi this is Laura. I am calling from Mint Valley and I was just calling uh…Mr. Kelley said he would like R.W. to come to come in and meet with a psychologist around noon and gather information.  So if you could, give us a call back."

5.28    R.W. did not have an IEP, and Plaintiffs Cecilia Wilson and Kevin Wilson are informed and believe that this communication from Mint Valley school officials was an effort to classify R.W. as covered by the Individuals with Disabilities Education Act after the fact.

5.29    The Wilson's made arrangements for R.W. to receive counseling with Dr. Trudy Iredale with Northwest Psychological Resources on January 18, 2013. Dr. Iredale diagnosed R.W. with Posttraumatic Stress Disorder because he was experiencing symptoms consistent with trauma following being physically restrained and placed in an isolation room. He was also given a diagnosis of Encopresis (involuntary defecation, especially associated with emotional disturbance or psychiatric disorder), Secondary, directly related to the traumatic incidents.  Prior to the trauma caused by R.W.'s placement in the isolation room and forcible restraint, R.W. was fully potty-trained. Dr. Iredale characterized his condition as severe enough to prevent him from attending school for the remainder of the school year.

5.30    R.W. is still not attending school.

COMPLAINT FOR DAMAGES - Page 10
No.

5.31    R.W. has suffered, and continues to suffer, a great deal of emotional and physical distress which has exacerbated an existing condition.  He is currently seeing a medical practitioner to help him overcome his continued anxiety and distrust issues.

5.32    The Wilsons are also suffering extreme mental suffering and emotional distress.

**C.  J.D. is forcibly placed in the isolation box and bullied excessively.**

5.33    J.D. is currently sixteen (16) years old and a tenth grade student at Lake Stevens High School in Lake Stevens, Washington, within the Lake Stevens School District. His mother Candace Dawson did not receive a copy of Mr. Kelly's November 27 letter, presumably because J.D. was not then a student at Mint Valley Elementary School.  Instead, Ms. Dawson was alerted to the use of the isolation room through a Facebook posting on or after 11/27/2012.

5.34    A parent posted photographs of the isolation room, and Ms. Dawson's sister, Melissa Miksch, saw the photographs.  Mrs. Miksch showed the pictures to Ms. Dawson and asked if she knew anything about the isolation room.  Ms. Dawson recognized the brick work around the isolation room as belonging to that of Mint Valley Elementary.

5.35    Ms. Dawson showed J.D. a picture of the isolation room with the door shut and asked him what the photo depicted.  J.D. shuffled his feet and asked how she had the photo. Ms. Dawson assured J.D. that he did not need to know why or how they had the photo, only whether he knew what it was.

5.36    J.D. replied: "It's the naughty room.  It is where the teachers put you if you are being bad."  He continued, "The teacher who puts you in the room gives you a little bench to sit on and closes the door and locks it."

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

5.37    Following J.D.'s description of the isolation room and its use, Ms. Dawson asked her son when he saw the isolation room, assuming that he had not been placed inside the box.  He answered, "The 4th grade.  Ms. Bean put me in there because of the cupcake."

5.38    Plaintiff J.D. has disabilities.   He was diagnosed with ADHD while in preschool and started medication the same year.  In second grade, J.D. began struggling with stuttering and stammering when trying to defend himself against bullying by other students.

5.39    During J.D.'s Third Grade year in 2008-2009, the bullying worsened. Because J.D. was having such a rough time at school, Ms. Dawson attempted to transfer her son to another school in the district, but her request was denied.

5.40    J.D.'s Fourth Grade year in 2009-2010 was the worst year of his academic career until that point because he was constantly bullied.   Three boys were primarily responsible for the bullying, and they routinely bullied J.D. without any consequences for their conduct, leaving J.D. feeling angry, frustrated, and confused.  The bullying included pulling his chair out from underneath him, taking things out of his desk, choking him in the breezeway on two occasions, constant name calling, and the initiation of a game called "spark plug."

5.41    Spark plug is a "game" that was started by the three students who targeted J.D. The entirety of the "game" is someone walks up behind you and says "spark plug."  The person then takes their binder, book, or whatever object they may be holding at the time and strikes the person in the front in the bottom with that object.  The striker walks away laughing, while the recipient is left feeling hurt and violated.

5.42    J.D. was bullied throughout his fourth grade year 2009-2010, not just by students, but also by staff as well.  J.D.'s teacher that year, Ms. Bean, did not intervene even

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

though the bullying was often done right in front of her. Instead, Ms. Bean was condescending and belittling to J.D.

5.43    Although J.D. was choked twice, Ms. Dawson never received a phone call or a letter advising her that bullies were choking him. When J.D. told her about the first chocking incident, she called the school to check into her son's allegations. School officials confirmed J.D.'s report. However, she was advised by staff, including Mr. Kelley, that there was nothing that could be done. A short time went by and it happened again. This time when Ms. Dawson contacted the school, she was advised that "the other boy had issues and that they were dealing with it" and that she needed to let the school handle the situation. They also advised her that if they felt like she needed to know something, they would let her know.

5.44    Sometime during the spring of 2010, the cupcake incident occurred. A fellow classmate was celebrating a birthday by bringing cupcakes for the entire class. Ms. Bean had passed out the cupcakes to the students, including J.D. While eating the cupcake, he got frosting on his face. According to J.D., Ms. Bean responded to the slight mess by crumpling up his unopened lunch and throwing it in the garbage. This unreasonable conduct by his teacher, as well as the fact that he would have no more food until he got home, upset J.D. At this point, Ms. Bean required J.D. to go into the isolation room.

5.45    After the cupcake incident, J.D. was forcibly placed in the isolation chamber about four to five more times during the 2009-2010 school year. He recalls once having to go to the bathroom so badly that he screamed: "I have to go to pee, really, really bad." He had to bang on the door with his elbows to get someone to hear his request. After he received the hall pass, he stated that he had to run through the halls because he had to go to the bathroom so badly.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

5.46   By his Fifth Grade year, Ms. Dawson observed that her son did not seem to trust staff, and J.D. experienced increased disability-related behaviors.  J.D. began weekly counseling sessions to deal with his depression and increased levels of anxiety.  J.D. had been previously diagnosed with Attention Deficit Hyperactivity Disorder.  After being placed in the isolation room on multiple occasions, J.D. required increased ADHD medications to treat behaviors and mood swings.  While J.D. did not have an IEP in place at the time he was placed in the isolation room during his fourth grade year, by his fifth grade year, an IEP was also required to accommodate J.D. for the increased disruption in his education as a result of being placed in the isolation room.

5.47   On November 30, 2012, Ms. Dawson took J.D. to a psychiatrist, Dr. Nawar Alnaquib for evaluation regarding the impact the use of the isolation chamber had on him and to discuss the ongoing anxiety and depression he has dealt with since the 2009-2010 school year.  When Dr. Alnaquib asked how being in the room made him feel, he told her that it made him scared.  He further stated that he would beat on the walls and door trying to knock it down so that he could escape.

5.48   J.D. has suffered, and continues to suffer, a great deal of emotional and physical distress which has exacerbated an existing condition.  He is currently seeing a medical practitioner to help him overcome his continued anxiety and distrust issues.

5.49   Candace Dawson is also suffering extreme mental suffering and emotional distress.

COMPLAINT FOR DAMAGES - Page 14
No.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

# VI.   CAUSES OF ACTION

### A.  Violations of Civil Rights Under 42 U.S.C. § 1983 – Fourth Amendment and Fourteenth Amendment– Unlawful Seizure

6.1     Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as through set forth in full.

6.2     At all material times, Defendants were acting under color of law.

6.3     The U.S. Constitution protects Plaintiffs R.W. and J.D. against unreasonable seizures and excessive force.

6.4     By restraining R.W. and J.D., and then locking them inside a closet-like room for long and indeterminate periods of time as a form of punishment, Defendants violated their Fourth and Fourteenth Amendment rights to be free from an unreasonable seizure.

6.5     By engaging in the acts described herein, Defendants, acting under color of law and with deliberate indifference, violated the Plaintiffs' rights under the U.S. Constitution to be free from unreasonable seizures and excessive force.

6.6     The rights of R.W. and J.D. to be free from unreasonable seizures as described herein was clearly established in law at the time of the incidents alleged.

### B.  Violations of Civil Rights Under 42 U.S.C. § 1983 – Fourth Amendment – Failing to Adequately Train and/or Supervise

6.7     Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as through set forth in full.

6.8     At all material times, Defendants were acting under color of law.

6.9     R.W. and J.D., like all United States citizens, have a constitutional right to be free from Defendants' unconstitutional supervisory inaction or action under the Fourth Amendment to the United States Constitution.

COMPLAINT FOR DAMAGES - Page 15
No.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

6.10    Defendants were deliberately indifferent to R.W.'s and J.D.'s civil rights by failing to adequately train, monitor, or supervise Defendants Kelly, Stein, Bean, Jane Does 1-10 and John Does 1-10 in their use of the isolation box, which was clearly a violation of R.W.'s and J.D.'s civil rights.

6.11    Defendants showed a deliberate indifference to the rights of R.W. and J.D. by failing to promulgate a policy, procedure, or practice to properly train and to prevent Defendants' tortious and unconscionable mistreatment against R.W. and J.D. that occurred in this case.

6.12    Defendants either knew or should have known that R.W. and J.D. were being mistreated and that Defendants locking them in the isolation box for extended and indeterminate periods of time was unnecessarily dangerous, reckless, without regard to the consequences, and without regard the rights and safety of others.   Despite having such knowledge, Defendant acquiesced in the constitutional depravation by allowing its agents to lock R.W. and J.D. in a windowless closet-like room for long and indeterminate periods of time.

6.13    As result of their deliberate indifference, Defendants failed to properly act in ensuring that Defendant Kelly, Stein, and Bean were properly trained and/or supervised, thereby needlessly violating R.W.'s and J.D.'s Fourth Amendment rights.

**C. Violations of Civil Rights Under 42 U.S.C. § 1983 – Fourth Amendment – Unconstitutional Policy**

6.14    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as through set forth in full.

6.15    At all material times, Defendants were acting under color of law.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

6.16    R.W. and J.D., like all United States citizens, have a constitutional right to be free from unconstitutional policies under the Fourth Amendment to the United States Constitution.

6.17    Defendants committed a constitutional violation by enacting policies, procedures, or practices that resulted in Defendants repeatedly locking R.W. and J.D. into closet-like room for long and indeterminate periods of time.

6.18    Defendants' committed a constitutional violation by enacting policies, procedures, or practices that resulted in Defendants Kelly, Stein, and Bean repeatedly confining R.W. and J.D. within a locked and windowless closet-like room for long and indeterminate periods of time without any written informed parental consent or parental notification as required by law.

6.19    The policies, procedures, or practices that Defendants enacted resulted in unreasonable punishment toward R.W. and J.D. that was not tailored to meeting their needs. As a result, R.W.'s and J.D.'s constitutional right to be free from unconstitutional policies was violated.

### D.  Violations of Civil Rights Under 42 U.S.C. § 1983 – Fourteenth Amendment – Substantive Due Process

6.20    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as through set forth in full.

6.21    At all material times, Defendants were acting under color of law.

6.22    R.W. and J.D., like all United States citizens, have a constitutional right to substantive due process under the Fourteenth Amendment to the United States Constitution.

COMPLAINT FOR DAMAGES - Page 17
No.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

6.23    Restraining R.W. and J.D. and locking them inside a closet-like room for long periods of time as punishment was severe and disproportionate to the behavior need present and therefore shocking to the conscience.

6.24    As result of Defendants' conduct, R.W.'s and J.D.'s fundamental liberties were denied.

### E.  Washington Constitutional Law

6.25    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as through set forth in full.

6.26    R.W. and J.D. as children of citizens of the state of Washington and residing within the state borders, had a constitutional right to an education free of unreasonable interference from school district officials.

6.27    By restraining R.W. and J.D., and then locking them inside a closet-like room for long and indeterminate periods of time as a form of punishment, Defendants violated their right to equal access to their education without unreasonable restraint and isolation in violation of the Washington State Constitution Article IX sec. 1.

### F.  Washington Common Law – Negligence

6.28    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as through set forth in full.

6.29    Defendants have a duty to exercise reasonable care to avoid from harming all foreseeable plaintiffs.  Defendants have a duty to exercise reasonable care in the hiring, training, and supervision of their employees and agents.  Defendants have a duty to use reasonable care in administering discipline to students, with whom they have a special relationship.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

6.30    Defendants breached their duties by subjecting R.W. and J.D. to unnecessary and inhumane punishment.  Defendants' act of repeatedly restraining, confining, and/or allowing others under their control and supervision to confine, R.W. and J.D. to the closet-like room for long indeterminate periods of time was unreasonable and breached the standard of care.

6.31    Defendants' acts of hiring, retaining, failing to supervise, or failing to train Defendants Kelly, Stein, Bean, and Jane and John Does 1-10 was unreasonable and breached the standard of care.

6.32    As a proximate result of Defendants' negligence, Plaintiffs have suffered significant mental, emotional, and cognitive damages, as well as special damages.

**G.  Washington Common Law – Outrage**

6.33    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as through set forth in full.

6.34    R.W. and J.D. were vulnerable elementary school aged children at the time they were locked in the isolation room by the defendants.  Nevertheless, Defendants chose to make R.W. and J.D. suffer by locking them inside a closet-like room, in an attempt to "break" him.

6.35    Defendants' acts and omissions were so outrageous as to shock the conscience of a reasonable person in society.  Defendants' actions were so unreasonable, cruel, and unusual as to amount to actionable outrage.  These acts proximately caused R.W. and J.D. to suffer significant mental, emotional, and cognitive distress, as well as special damages.

COMPLAINT FOR DAMAGES - Page 19
No.

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

### H. Loss of Consortium

6.36    As a direct and proximate cause of Defendants' negligence, Mr. and Mrs. Wilson have suffered a continuing injury to the parent-child relationship, including the loss of services, loss of love and companionship of R.W.

6.37    As a direct and proximate result of Defendants' negligence, R.W. has suffered a continuing injury to the parent-child relationship, including the loss of services, loss of love and companionship.

6.38    As a direct and proximate cause of Defendants' negligence, Mr. and Mrs. Dawson have suffered a continuing injury to the parent-child relationship, including the loss of services, loss of love and companionship of J.D.

6.39    As a direct and proximate result of Defendants' negligence, J.D. has suffered a continuing injury to the parent-child relationship, including the loss of services, loss of love and companionship.

### VII.      PRAYER FOR RELIEF

7.1    Plaintiffs seek general damages for extreme mental suffering and emotional distress, as well as special damages, in an amount to be proven at trial, all of which were directly and proximately caused by Defendants' acts and omissions.

7.2    Plaintiffs seek compensatory, punitive, and all other forms of damages available under 42 U.S.C. § 1983 for violations of R.W.'s and J.D.'s civil rights.

7.3    Plaintiffs seek reasonable costs and attorney fees incurred in prosecuting this matter.

7.4    Plaintiffs seek declaratory relief and ask for a ruling declaring that the policy, procedure, or practice of placing R.W., J.D., and other similarly situated students, in a locked

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336

isolation room for a long period of time, without supervision or communication, constituted a tortious and unconstitutional act, depriving R.W. and J.D. of their rights under the Fourth and Fourteenth Amendments to the United States Constitution

7.5     Plaintiffs pray for such other equitable or legal relief as the Court deems just.

## VIII.     RESERVATION OF RIGHTS

8.1     Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

## IX.     JURY DEMAND

9.1     Under the Federal Rules of Civil Procedure, Plaintiffs demand that this action be tried before a jury.

Dated this 25th day of November, 2015.

LAWRENCE LAW OFFICE, P.C.

By  /s/ Tara Lawrence
Tara Lawrence, Oregon State Bar # 990581
tara@taralawrencelaw.com
6960 SW Varns Street
Portland, OR 97223
Phone:  (503) 387-5571
Fax:  (888) 660-7336
     (*PRO HAC VICE* **PENDING**)


**FRIEDMAN | RUBIN**

By  /s/ Roger S. Davidheiser
Roger S. Davidheiser, WSBA# 18638
rdavidheiser@friedmanrubin.com
51 University Street, #201
Seattle, WA 98101
Phone:  (206) 501-4446
Fax:  (206) 623-0794

**ATTORNEYS FOR PLAINTIFFS**

LAWRENCE LAW OFFICE, P.C.
Tara Lawrence, Attorney at Law
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Phone 503.387.5571 / Fax 888.660.7336